## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**IN RE: THE MATTER OF**
**JAMES W. KLIPSTINE, JR., ESQ.**                    **No. 11mc21 RB/WJ/SMV**

### ORDER DENYING APPLICATION FOR READMISSION

THIS MATTER comes before this three-judge Panel[1] on the Court's *Order to Show Cause*

issued June 12, 2012, *see* Doc. 8; and on Mr. James W. Klipstine's *Petition for Admission to*

*Practice* in this District, filed March 8, 2012, *see* Doc. 7.   The Court will deny the petition.

**I.  Background**

On January 14, 2011, the New Mexico Supreme Court indefinitely suspended Mr. Klipstine

from the practice of law in the state courts.  *See* Doc. 1.  This is the third time that the New Mexico

Supreme Court has taken disciplinary action against Mr. Klipstine since 1989.  *See* Aug. 7, 2012 Tr.

at 4-5 (Klipstine admitting that he was indefinitely suspended from the practice of law in 1989[2]; that

he was readmitted and then issued a "deferred suspension" in 2004[3]; and that he was again

---

[1]  The three judge panel consisted of U.S. District Judges Robert C. Brack and William P. Johnson, and U.S. Magistrate Judge Stephan M. Vidmar.

[2]  *See In re Klipstine*, 108 N.M. 481, 775 P.2d 247 (1989) (suspending Mr. Klipstine for an indefinite period of at least one year for "blatant neglect" of cases, including cases in this Court in which he failed to file critical documents and failed to timely respond to discovery requests and dispositive motions; noting that Klipstine had submitted forged documents to this District's Bankruptcy Court and then lied about it to the disciplinary board; and ordering that, if Klipstine was granted reinstatement, he would be placed on a probationary status for at least one year under supervision by a court-appointed attorney and would have to demonstrate successful ability to comply with law-office and trust-account management instructions).

[3]  *See In re Klipstine*, No. 18,291 (N.M. S. Ct. September 29, 2004) (suspending Mr. Klipstine from the practice of law for two years for violating several rules in handling several appeals in state and federal courts and mismanaging trust accounts, but deferring the suspension and placing him on a two-year probation that required Mr. Klipstine to be supervised by an authorized New Mexico attorney who would meet with him on a regular basis, supervise his work and

indefinitely suspended in 2011).  According to his disciplinary file[4], at the time his most recent

disciplinary proceedings were begun in November 2009, Mr. Klipstine admits that he had refused

to apply for reinstatement to good standing after he completed his two-year probationary period

imposed in 2004.  *See In re Klipstine*, State Disciplinary Proceeding No. 11-2009-583, November

30, 2009 Specification of Charges at 15; *id.* Klipstine's Response to Specification of Charges at 4

(admitting that charge).  After over a year of proceedings and negotiations, Mr. Klipstine consented

to discipline in the state court, *see* N.M.R.A. 17-211 (providing for "discipline by consent"), and

> admitted that he had failed to provide competent representation to a client; failed to
> abide by the client's objectives for the representation; failed to provide prompt and
> diligent representation; failed to provide adequate communication; failed to properly
> safeguard client funds; failed to comply with the record keeping requirements for
> client funds; fail[ed] to withdraw from representation when the representation would
> violate the Rules of Professional Conduct; failed to make reasonable efforts to
> expedite litigation consistent with the interests of the clients; failed to make
> reasonable efforts to ensure his staff's conduct was compatible with his professional
> obligations; and engaging in conduct prejudicial to the administration of justice.

Doc. 10, Ex. 4 at 1-2 (Disciplinary Hearing Committee's Nov. 15, 2011 Findings of Fact and

Conclusions of Law filed in *In re Klipstine*, Disciplinary No. 11-2009-583 (N.M. 2011)).  As part

of his 2011 suspension, the New Mexico Supreme Court required Mr. Klipstine to "close his law

practice" and prohibited him from "counsel[ing], advis[ing], [or] hold[ing] himself out as an

attorney to any person in any legal proceeding," but it permitted him to be employed by Melissa

---

workload, instruct him on trust account matters and regularly report to the disciplinary board
regarding Mr. Klipstine's compliance; requiring a trust-account audit; and requiring Mr. Klipstine
to associate with an experienced appellate lawyer in every appeal he undertakes and requiring him
to comply with N.M.R.A. 17-214(H) concerning reinstatement after his probation ended).  As noted
*infra*, according to his disciplinary records, Mr. Klipstine failed to comply with the last requirement
but continued to practice on a probationary status from 2004-2011.

[4]  The Court has filed portions of Mr. Klipstine's disciplinary file as a sealed attachment to
this Order.

Honigmann, Esq. "as an investigator."  Doc. 3 at 1 (Mr. Klipstine's "Consent to Discipline" filed in the case at bar on March 21, 2011).

The Supreme Court's Order suspending Mr. Klipstine set out express requirements for potential readmission to practice in the New Mexico state courts, and ordered that Mr. Klipstine could only be potentially readmitted under a two-year probationary status.  *See* Doc. 10, Ex. 4 at 3. The Order provided that during that two-year probationary period, Mr. Klipstine had to be employed by another attorney or law firm approved by Disciplinary Counsel; that Mr. Klipstine's employer had to supervise him; and that Mr. Klipstine shall not

> participate in the management or administration of a law practice; shall not conduct trust account transactions; shall not participate in the supervision or management of lawyer staff; shall not participate in the supervision or management of non-lawyer staff except as to the extent customary during the course of representing clients, and [his] caseload shall be supervised, maintained, and controlled by his employer.

*Id.*  Melissa Honigmann[5] subsequently offered Mr. Klipstine "employment . . . should he be reinstated to the practice of law," and "agree[d] to supervise [him] and report to the office of disciplinary counsel as required" by submitting quarterly reports concerning Mr. Klipstine's compliance and supervision.  *Id.*  The Supreme Court Order specifically provided that, even when the two-year probationary period ended, these "conditions of employment are permanent and shall not expire upon completion of the period of probation."  January 14, 2011 Order suspending Mr.

---

[5]  The Court takes judicial notice that "Melissa Honigmann" is not listed as a licensed attorney under that name for the state of New Mexico, but that there is a licensed attorney under the name of "Melissa A. Sawyers" listed at the same address.  Ms. Sawyers is apparently not a member of the federal bar, thus she may not supervise him or control his cases before this Court.  Mr. Klipstine informed the Court that he and Ms. Sawyers are "partners;" that she is his "supervising attorney;" and that they have a law practice called "Klipstine and Sawyers, LLC."  Aug.7, 2012 Tr. at 10.  Mr. Klipstine and Ms. Honigmann/Sawyers previously had an LLC called "Klipstine and Honigmann, LLC".

Klipstine from the practice of law[6]; Aug. 7, 2012 Tr. at 18 (admitting that the "Supreme Court Order says that these restrictions will be [continued] after the probation is over"). The Supreme Court also expressly required Ms. Honigmann/Sawyers to report to the Disciplinary Board thirty days prior to the conclusion of Mr. Klipstine's probation to advise "whether [he] has satisfactorily complied with the supervisor's instructions and directives and . . . whether [he] has met applicable court and case deadlines." January 14, 2011 Suspension Order at 4. It further requires Mr. Klipstine to "comply with the requirements of Rule 17-214(H) NMRA regarding reinstatement from probation" within 90 days after he completes the two-year probationary period after reinstatement, *see* January 14, 2011 Suspension Order at 4-5, which means that, after the probationary period is over, another hearing will be held "at which the respondent-attorney shall have the burden of demonstrating by clear and convincing evidence that the respondent-attorney has the moral qualifications; that the respondent-attorney is once against fit to resume the practice of law and that the resumption of the respondent-attorney's practice of law will not be detrimental to the integrity and standing of the bar, the administration of justice or the public interest," N.M.R.A. 17-214(H).

More than two months after Mr. Klipstine was suspended from the practice of law in the state courts, he filed a "Consent to Discipline" in this Court, agreeing to be suspended "from this court until such time as he has complied with requirements for readmission to the courts of the State of New Mexico and of this court." Doc. 3. This Court immediately entered an Order suspending Mr. Klipstine from the practice of law in the District Court and informed him that he would have

---

[6] Mr. Klipstine did not submit the Supreme Court's January 14, 2011 suspension order to this Court, but the Panel obtained it from the New Mexico disciplinary board before the August 7, 2012 hearing and referred to it at the hearing. The Court will attach the order as an exhibit to this Order. The Court has filed into the record the exhibit notebook that Mr. Klipstine presented at the hearing but that he did not file into the record.

to reapply for admission, should he desire to practice before this Court in the future. *See* Doc. 4.

Mr. Klipstine applied for reinstatement to the New Mexico State Bar, and on January 30, 2012, the New Mexico Supreme Court entered an order providing that Mr. Klipstine "has been **reinstated to probationary active status**." Doc. 6. ("Clerk's Certificate of Reinstatement to Probationary Active Status") (bolding and underlining in original).

On March 8, 2012, Mr. Klipstine filed a petition for admission to practice in this Court on the form the Court provides, stating that he "is a member in good standing of the Bar of the State of New Mexico," Doc. 7 at 1, but also admitting that he "is on probationary status with the Supreme Court of New Mexico," *id.* at 2. The Court issued an Order to Show Cause on June 12, 2012, requiring Mr. Klipstine to show cause why he should be readmitted and setting the date for a hearing on the matter. *See* Doc. 8.

## II. Applicable law.

When an attorney has been disciplined or suspended from the practice of law by any state, this Court may also suspend the attorney. *See* D.N.M. L.R-Civ. 83.10(a). Mr. Klipstine waived his right to an investigation and/or hearing on the matter of his suspension by filing his Consent to Discipline, thereby agreeing that suspension was appropriate from the practice of law in this Court. If a licensed attorney is not employed by the United States Government or one if its agencies or by the office of the Federal Public Defender, to be admitted to the New Mexico Federal Bar, "an attorney must be a member in good standing of the State Bar of New Mexico." D.N.M. LR-Civ. 83.2(a). Our rules also provide that an attorney who has been suspended from practice in this Court "must file a written application setting forth, in detail, the grounds for readmission." D.N.M. LR-Civ. 83.10(b).

Because he has already been suspended from the practice of law, it is appropriate to apply

our local procedural and substantive rules regarding admission and readmission, and, of course, we must also apply the constitutional standards applicable to admission to a state or federal bar. *See In re Mattox*, 758 F.2d 1362, 1365 (10th Cir. 1985) (affirming, where local rules did not expressly state a procedure to be followed for readmission, that it was not "inappropriate" for the district court to apply its general requirements for admission – that the applicant be admitted to practice before a state court and be of good moral character –  in determining whether to readmit a suspended attorney, and viewing the petition for reinstatement as "more akin to a case involving his initial admission than to one involving suspension or disbarment").   Therefore, this Panel is not deciding whether to suspend Mr. Klipstine (*i.e.*, to take away a vested property interest)- that decision was made in the state court; he consented to suspension in this Court; and Chief Judge Black's suspension Order, *see* Doc. 4, is still operative.

The Court has broad discretion to readmit an attorney to practice in this Court.  *See In re Mattox*, 758 F.2d at 1368 (holding that a district court's "findings which, if supported by the record, constitute a valid basis for denying her readmission"); *In re Martin*, 400 F.3d 836, 841 (10th Cir. 2005) (stating, "we review the district court's decision to continue Mr. Martin's suspension for an abuse of discretion" and noting that "[t]he trial court's factual findings regarding the conduct of attorneys will not be disturbed unless there is no reasonable basis to support those conclusions") (internal quotation marks omitted).  Procedurally, we must "adhere[] to [our] own rules," and the procedures we follow must "meet constitutional standards."  *In re Mattox*, 758 F.2d at 1364.

To satisfy the notice requirements of due-process in this case, the Panel  must put Mr. Klipstine on notice "that the court was contemplating denying [his] [re-]admission;" he must be aware of reasons that could preclude his admission; and he must have an opportunity "to be heard in response.  Or the court could have notified [him] that [his] application had been provisionally

6

denied for specified reasons, and that [he] could respond and request a hearing within a stated time."

*In re Mattox*, 758 F.2d at 1368 (internal quotation marks omitted); *cf. In re Bello*, No. 06-2199, 237 Fed. App'x. 363 (June 26, 2007) (noting that, although the show-cause order failed to inform the attorney of the basis for the court's suspension hearing, its subsequent, "forty-three page memorandum detailing further the factual basis of its earlier show cause order" was sufficient to give notice of the reasons for the proposed suspension).

### III.  Analysis.

The only basis Mr. Klipstine gives as grounds for readmission is that he has been readmitted to the New Mexico State Bar on a probationary status.  *See* Doc. 7.  As noted above, however, our rules expressly require an applicant to establish that he is "a member in good standing of the State Bar of New Mexico."  D.N.M. LR-Civ. 83.2(a).  As Mr. Klipstine is well aware from his two prior suspensions and probations, to be a member in good standing with the New Mexico State Bar, the New Mexico Supreme Court must issue an order *removing* Klipstine "from probationary status and [] reinstat[ing him] to good standing as an attorney and member of the Bar of the State of New Mexico."  *In re Klipstine*, No. 18,291 (N.M. S. Ct. Dec. 16, 1994) (Order reinstating Klipstine "as an active member in good standing").  *See also* February 20, 1991 Supreme Court Certificate (stating that Klipstine was "reinstated to *membership* in the State Bar of New Mexico" on February 20, 1991) (italics added); *In re Klipstine*, No. 18,291 (Order and Recommendation of the Disciplinary Board noting that the Supreme Court placed Klipstine on probationary status on February 20, 1991 and recommending that he "be released from his probationary status and that he be reinstated as an attorney in good standing as a member of the Bar of the State of New Mexico").  An attorney on probationary status has only made a record indicating that he "can still perform legal services *with proper supervision*," but the attorney must actually prove that he was successful during

7

that period of probation before he is reinstated as an attorney in good standing. *See* N.M.R.A., Rule 17-206(b). Mr. Klipstine's disciplinary record indicates that he has not been a member in good standing of the New Mexico State Bar since 2004. And this Court has long required an attorney on probationary status in the state court to successfully complete his probation before applying to be readmitted to practice in this Court. *See*, *e.g.*, *Rios v. Village of Hatch ex rel. Hatch Police Dep't*, No. 03-2049, 86 Fed. App'x 366, 369, 2003 WL 22941803, *1 (10th Cir. Dec. 15, 2003) (affirming removal of attorney Jose L. Arrieta from case because he had not been readmitted to practice in federal court after New Mexico state suspension and reinstatement on probationary status, and noting that, in 2000, the "Active District Judges decided that [Arrieta] must complete [his] probationary period with the New Mexico Supreme Court and, upon completion of that requirement, [he] may apply for readmission to the Federal Bar and the [CJA] Panel").

Mr. Klipstine had express notice, under our local rule, that he was mandated to show that he is a "member in good standing" in the New Mexico State Bar before he may be admitted to practice in this Court. He was also given notice by the Order to Show Cause and at the August 7, 2012 hearing that he had to present more than just evidence that he was on *probationary* status as grounds for readmission. Mr. Klipstine had ample opportunity at the hearing to establish the ground of good standing in the state bar, but he is legally unable to do so. Therefore, the Court will deny his petition for readmission without prejudice to its refiling if, and when, Mr. Klipstine has successfully fulfilled his two-year period of probation and has been formally reinstated as a member in good standing in the New Mexico State Bar. *See In re Smith*, No. 08-1323, 329 Fed. App'x 805, 808, 2009 WL 1303165, *3 (10th Cir. 2009) (holding that the "district court . . . did not abuse its discretion in denying his petition for reinstatement" where membership in good standing in the state bar was required before attorney could be admitted to the federal bar, and applicant had not been readmitted

8

to state bar).

**IV.  Concerns about Mr. Klipstine's behavior in this Court during his suspension and while not authorized to practice in this Court.**

The Panel wants to caution Mr. Klipstine, however, about his behavior in this Court while he has been suspended from practicing law.  It appears that, during his state suspension while he was authorized only to act as an "investigator" for Ms. Honigmann/Sawyers, Mr. Klipstine apparently violated the terms of his suspension by continuing to represent clients in this Court and then by working as a "legal assistant" for Mr. Alexander Ching in the cases of *United States v. Fort*, No.10cr2157 (D.N.M.), and *Doporto v. Kim*, 10cv0145 JCH/KBM (D.N.M.).

For example, in the *Doporto* case, Mr. Klipstine filed the complaint in February 2010 but failed to properly serve any of the defendants.  *See* 10cv0145 JCH/KBM Doc. 1; Doc. 13 (Nov. 23, 2010 Order denying default judgment because of improper service).  After the defendants were served in December 2010, on January 7, 2011 the Court ordered the parties to meet and confer and to provide a provisional discovery plan by January 27, 2011.  *See id.* Doc. 23.  At no time during this period did Mr. Klipstine withdraw from representing Mr. Doporto.  Instead, he failed to meet with opposing counsel or to submit his portion of the plan.  *See id.* Doc. 26 at 1 (January 27, 2011 incomplete plan submitted by counsel for defendant stating that Mr. Klipstine "was not available to meet and confer" and that his "office advised that he intended to file a Motion to extend the time to submit this Report, but no Motion was filed"); *id.*, Doc. 29 (second Initial Scheduling Order finding that "Plaintiff failed to meet and confer, in violation of Judge Molzen's initial scheduling order and resulting in an incomplete JSR.  **The parties are warned that another failure to meet and confer may result in the imposition of sanctions**.") (bolding in original).  After the Magistrate Judge became aware that Mr. Klipstine had been suspended from the practice of law in the state

9

court, he held a conference, at which a "paralegal" from Mr. Klipstine's law firm informed the Court that Mr. Klipstine would withdraw from the case, that the firm was searching for new counsel, and that she would inform the Court  by February 17, 2011, of the "results of a firm meeting that will consider who will represent Mr. Doporto." *Id.*, Doc. 34 at 1 (clerk's minutes of conference); *id.*, Doc. 35 at 1.  But Mr. Klipstine still did not file a motion to withdraw, in violation of the January 14, 2011 Suspension Order requiring Mr. Klipstine to close his law practice and follow each of the requirements of Rule 17-212. *See* Doc. Jan. 14, 2011 Suspension Order at 2; N.M.R.A. 17-212(B) (providing that, "[i]n the event the client does not obtain substitute counsel before the effective date of the . . . suspension, it shall be the responsibility of the attorney to advise in writing the court or agency in which the proceeding is pending, of the attorney's automatic withdrawal from participating further in the proceeding").  Mr. Klipstine filed an affidavit and Certificate of Compliance with the New Mexico Supreme Court on February 10, 2011, however, swearing that he **had** already complied with every requirement of Rule 17-212. *See In re Klipstine*, February 24, 2011 letter from Chief Disciplinary Counsel to Mr. Klipstine noting the filing of the certificate and approving Mr. Klipstine's employment by Ms. Honigmann "as an investigator").

On April 1, 2011, because no new counsel had entered an appearance and Mr. Klipstine **still** had not filed a motion or notice withdrawing as counsel (despite the filing of this Court's March 22, 2011 Order suspending Mr. Klipstine from federal practice), the Magistrate Judge issued an order requiring Mr. Klipstine to "promptly file a motion to withdraw from this case" and for the plaintiff to have a new attorney enter an appearance within twenty days or the case would move forward with the plaintiff proceeding pro se. *See Doporto*, No. 10cv0145 JCH/WPL Doc. 35 at 1.  On April 6, 2011, Mr. Klipstine finally filed the motion to withdraw. *See id.*, Doc. 36.  The following day, Mr. Ching, who is not associated with Ms. Sawyers' and Mr. Klipstine's law firm, but whose law office

10

is in the same building, *see* Aug. 7, 2012 Tr. at 15, filed an entry of appearance. *See Doporto*, 10cv0145 JCH/WPL, Doc. 38.  After Mr. Ching failed to timely respond to a dispositive motion in violation of both the Court's order and our local rules and blamed it on his staff's failure to properly "tickle" the response deadline, the Court admonished Mr. Ching, warning him that, "in the future he must strictly adhere to all deadlines" and that the "Court is unlikely to forgive [future] missed deadlines by Doporto." *Id.*, Doc. 55 at 8.  On March 15, 2012, when Mr. Ching failed to initiate a scheduled status-conference call as ordered, Mr. Klipstine, allegedly acting as a "legal assistant," appeared telephonically to represent the plaintiff, and the Magistrate Judge ordered Mr. Ching to submit a letter explaining his absence. *See id.*. Doc. 69. When Mr. Ching failed to obey the order, the Magistrate Judge issued an order to show cause why sanctions should not be imposed. *See id.*, Doc. 70.  At the show-cause hearing, Mr. Ching again blamed the failures on his unnamed "staff" for not scheduling the status conference and for not mailing the letter he allegedly prepared in response to the Magistrate Judge's instructions. *See id.*, Doc. 77.  The Court warned Mr. Ching that, if he failed to follow another order, the Court would impose sanctions. *See id.*

On April 12, 2012, Mr. Klipstine appeared at a status conference with Mr. Ching, at which time the Court addressed the plaintiff's failure to "identify all doctors who will serve as witnesses and list the topics on which they will testify" and ordered plaintiff to prepare such lists and to supplement his Rule 26 disclosures within 10 days "as to the substance of the expert testimony for each doctor who will testify as to the causation of Plaintiff's injuries."  Doc. 75.  Plaintiff failed to meet the deadline and did not file a list of medical witnesses until May 15, 2012, so the defendants moved to strike the witnesses and/or to grant summary judgment in their favor as a sanction. *See id.*, Doc. 80.  Mr. Ching again failed to file a response to the motion.  The Magistrate Judge issued an Order partially granting the Defendants' motion but denying summary judgment. *See id.*, Doc.

85. Oddly, a week later, Mr. Ching moved for an untimely extension of time in which to respond to the "motion for summary judgment" on the following grounds: that Mr. Klipstine, who was working as his legal assistant, had been assisting in the prosecution of the case; that Mr. Ching "relied upon" Mr. Klipstine to prepare the response to the motion for summary judgment; and that Mr. Klipstine had been traveling to Houston with his wife for her medical treatment and had failed to timely prepare the response. *Id.*, Doc. 87 at 1. At a hearing on the matter, the Magistrate Judge noted the mootness of the motion for an extension but "warned Mr. Ching that if there is one more problem, such as another missed deadline, it will ask the Chief Judge to remove him from the federal bar." *Id.*, Doc. 95.

At the hearing on Mr. Klipstine's petition for readmission, when a panel member questioned Mr. Klipstine regarding the inconsistency between the request for an extension of time based upon Mr. Ching's contention that he was unable to respond to a motion for summary judgment because *Mr. Klipstine* was not "available to assist him on the case" and Mr. Klipstine's insistence that his role was only as a "legal assistant," Aug. 7, 2012 Tr. at 14, Mr. Klipstine recharacterized his involvement and the nature of the motion for summary judgment, stating:

> That issue involved a discovery issue. One of the . . . functions that I serve for Mr. Ching was communication with the client to prepare responses to discovery requests. Unfortunately, I had to be in Houston, Texas, with my wife who had medical problems, and so I was unable to complete the discovery request. And as a result of that, . . . I told Mr. Ching that we needed to prepare a document that indicated that I was unavailable to complete the task. So and essentially the reason I did that is I didn't feel that Mr. Ching should take the brunt of the court's displeasure when it was, in fact, my absence that prevented the timely response to discovery request.

*Id.* The face of the record clearly demonstrates, however, that the Defendants' motion to strike and/or for summary judgment was based on legal issues resulting from Plaintiff's failure to timely comply with the Court's order to reveal the names of the medical witnesses who would testify and

12

the topics on which they would testify.  The motion was not solely based on the Plaintiff's failure to complete a discovery request.  Further, it appears that the state Disciplinary Counsel has not approved Mr. Klipstine's employment by Mr. Ching either before or during his probationary status. And finally, Mr. Ching's alleged behavior - failing to "tickle" deadlines, failing to comply with discovery, and failing to timely respond to orders and dispositive motions, which he attributes to Mr. Klipstine, smacks of the same failures and case mismanagement for which Mr. Klipstine has been disciplined three times.

Mr. Klipstine has demonstrated this same behavior in other, fairly recent cases in this Court while he was engaged in the 2009-present disciplinary proceedings and while he was still on probation pursuant to the 2004 Disciplinary Order. *See, e.g.*, *Davis v. City of Carlsbad Police Dep't*, No. 09cv0846 JEC/RHS Doc. 4 (D.N.M. Jan. 13, 2010) (Order closing civil-rights case without prejudice for Mr. Klipstine's failure to serve or prosecute); *Davis v. City of Carlsbad Police Dep't*, No. 10cv0231 BB/CG Doc. 31 (D.N.M. Oct. 25, 2010) (dismissing civil-rights case after Mr. Klipstine failed to respond to motion to dismiss based on bar of statute-of-limitations); *Shoemaker v. Sheriff of San Miguel County*, No. 09cv0609 JP/ACT Doc. 12 (D.N.M. Jan. 4, 2010 (Order dismissing case after Mr. Klipstine failed to respond to motion to dismiss based on his failure to state a cognizable federal claim under 42 U.S.C. § 1983).  *See also United States v. Moncayo*, 09cv1044 BB Doc. 73 (D.N.M. Oct. 27, 2010) (Order filed by the Tenth Circuit in the appeal, No. 10-2149, noting that Mr. Klipstine failed to respond to the Tenth Circuit's September 14, 2010 order directing him to file a status report regarding a pending district court matter; that he failed to file a motion to withdraw as directed by the Tenth Circuit's October 14, 2010 order, and removing Mr. Klipstine as counsel for the appeal and directing Mr. Klipstine to show cause why he should not be referred to the court's attorney-discipline program).  The Court makes no formal findings regarding

these issues - again, they are for another day.  The Court does not know whether Ms. Sawyers is aware of Mr. Klipstine's employment with Mr. Ching, but clearly she should be monitoring and controlling both his performance and his caseload.  That may be an inappropriate task, since she is not a member of the federal bar and may not be aware of federal rules of practice and procedure or of the basics of federal criminal and civil-rights law.

As another example of Mr. Klipstine's activity in this Court while suspended from the practice of law in this Court, in *United States v. Fort*, No.10cr2157 RB, the Court appointed a federal public defender as counsel for Roy D. Fort on April 13, 2012 on a charge of violation of his probation.  *See id.*,  Doc. 20.  A week later, without filing a motion to substitute counsel, Mr. Ching filed a motion for a continuance on the initial hearing for Mr. Fort's probation-violation charge.  *See id.*, Doc. 21.  When the clerk's office advised Mr. Ching's office that the Court could not rule on a motion for continuance until a motion to substitute counsel and entry of appearance had been filed, he filed the motion for substitution of counsel.  *See id.*, Docs. 22, 23.  But *Mr. Klipstine's* office began calling the clerk's office regarding various failures to properly file documents and proposed orders, and Mr. Klipstine came to Mr. Fort's show-cause hearing on May 16, 2012, talked with Mr. Fort, and then asked the courtroom deputy how these hearings usually proceeded.  *See* Aug. 7, 2012 Tr. at 2, 5-6.  He then talked more with Mr. Fort and "consulted with the U.S. Attorney," and with Mr. Ching when Mr. Ching arrived for the hearing.  *See id.*  Mr. Fort told the marshal that Mr. Klipstine was his attorney.  *See id.*  When a panel member asked Mr. Klipstine about this representation at the August 7, 2012 hearing, Mr. Klipstine stated that, because the New Mexico Supreme Court permitted him to work as an investigator and legal assistant, he was

> here to assist Mr. Ching in presentation of issues concerning Mr. Fort's probation
> before the court.  So I was not here representing Mr. Fort as an attorney; although,

I was representing Mr. Fort in the capacity of State matters as an attorney[7], but not in the federal court.

Aug. 7, 2012 Tr. at 5.  Again, it appears that Mr. Klipstine is actually representing Mr. Fort, with Mr. Ching appearing only when he has to, but the resolution of that issue is for another day.  The problem is that Mr. Klipstine's alleged employment with Mr. Ching appears[8] to violate the New Mexico Supreme Court's Order that makes Melissa Honigmann/Sawyers his only "supervisor" and "employer,"[9] and requires him to obtain approval from the Office of Disciplinary Counsel if that employment changes.  *See In re Klipstine*, No. 18 291 Jan. 30, 2012 Order reinstating Klipstine to the probationary practice of law.

Further, the Tenth Circuit has approved of and adopted the standard that a suspended

--------

[7]  The Court takes judicial notice that New Mexico attorney Barry Crutchfield, and not Mr. Klipstine, represented Mr. Fort in the underlying criminal case, along with two Oklahoma attorneys. *See Fort*, No.10cr2157 RB,  Doc. 1.  A review of the New Mexico state case-locator website does not show that Mr. Klipstine has represented Mr. Fort in any prior proceeding, and none appear to still be pending.

[8]  The Court does not, at this time, make any findings in regard to this issue, which may be more appropriately addressed in his pending disciplinary proceedings.

[9]  Although the New Mexico Supreme Court's Suspension Order requires Mr. Klipstine to be "employed" by another attorney approved by the Office of Disciplinary Counsel, Mr. Klipstine indicates that he is a shareholder in "Klipstine and Sawyers, LLC."  Mr. Klipstine's disciplinary file indicates that the New Mexico Supreme Court denied the Disciplinary Board's request to approve of Mr. Klipstine's and the Board's initial negotiated disciplinary agreement in part because the agreement had a provision permitting Mr. Klipstine to again become a partner or shareholder in a lawfirm after successful completion of his two-year probation (during which time he could only practice law as an "employee" - or associate employed by a firm).  *See In Re Klipstine*, No. 18,291 Klipstine's November 24, 2010 Unopposed Motion for Reconsideration at 3(seeking reconsideration of the Supreme Court's October 25, 2011 Order denying the Board's recommendation to accept the agreement).  The Court is concerned that Mr. Klipstine has resumed probationary private practice in a way that is not permitted by the Supreme Court's Order requiring that he practice only as an employee because he apparently is a shareholder in his LLC with Ms. Sawyers, and he may be splitting fees with her and Mr. Ching, but the Court leaves that issue to the Disciplinary Board of the New Mexico Supreme Court to ferret out.

attorney may only "work as a law clerk, with respect to matters in this court with no contact with clients or the court, under the close supervision of an attorney who is admitted to practice before us." *In re Martin*, 400 F.3d at 843 (holding that "a suspended attorney should not be permitted to have contact with clients"). The Panel adopts the *In re Martin* standard and holds that a suspended attorney employed as a legal assistant or law clerk may not appear telephonically or in person by himself at a federal hearing; may not communicate with current or prospective federal clients; may not bear the burden of meeting response deadlines on substantive motions; and may not consult with opposing counsel and courtroom personnel at hearings in a way that makes it appear that he is representing the client, because such behavior exceeds the permissible bounds of one who has been suspended from the practice of law in this Court. Because Ms. Honigmann/Sawyers is not associated with Mr. Ching and is not a member of the Federal Bar, it is impossible to know whether she is aware of Mr. Klipstine's activities in these cases over which she has no supervisory authority or control. Mr. Klipstine is warned that, while he is not admitted to practice in this Court, he shall not have any further contact with clients in these federal cases; shall not take on the responsibility of responding to motions on behalf of Mr. Ching; cannot split any fees with Mr. Ching; and cannot speak for clients on Mr. Ching's behalf at hearings or conferences.

**IT IS ORDERED** that James W. Klipstine, Jr.'s Petition for Admission [Doc. 7] is DENIED because he has failed to establish that he is a member in good standing of the New Mexico State Bar;

**IT IS FURTHER ORDERED** that Mr. Klipstine shall not have any contact with clients in the federal cases in which he is serving as a "legal assistant;" that he shall bear no personal responsibility for filing any documents in federal cases; that he shall not appear by himself on behalf of those federal clients at any federal hearing or other legal proceeding; that he may not split fees

with Mr. Ching or any other lawyer in a federal case; and that he shall deliver a copy of this Order

to Melissa Honigmann/Sawyers, Alexander Ching, and to the Disciplinary Board of the New Mexico

Supreme Court.

**ENTERED FOR THE COURT ON AUGUST 28,  2012.**

Matthew Dykman
Clerk of Court